**In the Matter of William H. BENNETHUM.**

**Misc. No. 5.**

United States District Court
D. Delaware.

June 28, 1961.

———◆———

Frank H. Hollis, David B. Coxe, Jr., Wilmington, Del., and Joseph G. Feldman and Stephen M. Feldman (of Feldman & Feldman), Philadelphia, Pa., for William H. Bennethum.

S. Samuel Arsht and William Poole, Wilmington, Del., Committee designated by the court for the presentation of charges.

Before WRIGHT, Chief Judge, and STEEL, District Judge.*

PER CURIAM.

The Supreme Court of Delaware has entered an order striking the name of William H. Bennethum from the roll of its attorneys and revoking his right to practice law in all courts of that State. The reasons for its action are stated in In re Bennethum, Del.1960, 161 A.2d 229, reargument denied Del.1960, 162 A.2d 429. Upon receiving a certified copy of

---

* Because of illness, the third judge of the District Court, The Honorable CALEB R. LAYTON, III, did not sit or otherwise participate in the decision.

542

the disbarment order pursuant to the direction of the Supreme Court, this Court entered an order which, after referring to the disbarment by the Supreme Court, temporarily suspended Bennethum from practicing law in this Court, and directed him to show cause why his name should not be stricken from its rolls and his right to practice law before it should not be revoked.

After having considered the answer filed by Bennethum to the show cause order and the briefs filed and argument made on his behalf, we have reached the following conclusions:

■ While the admission to practice before a state court is a prerequisite to admission to practice before a federal court, the loss of the right to practice before the state court does not automatically require the revocation of the right to practice in the federal court. Nevertheless, the natural effect of an unreversed disbarment order by a state court is to destroy the fair, private and professional character of the attorney, which is essential for membership in the federal bar. It is therefore settled that when disbarment is sought in a federal court upon the basis of a state court disbarment, the latter will be followed by the federal tribunal unless upon an intrinsic consideration of the state court record it appears that (1) the state proceeding was wanting in due process because of lack of notice or opportunity to be heard, (2) such an infirmity of proof of want of fair, private and professional character existed in the state court as to clearly convince the federal court that the state decision should not be accepted, or (3) some other grave reason appears why under principles of right and justice the federal court should not follow the state court. If an intrinsic examination of the state proceeding reveals an absence

of either of these standards, a federal court may not rely upon a state proceeding as a basis for disciplinary action in the federal court. Selling v. Radford, 1917, 243 U.S. 46, 49, 51, 37 S.Ct. 377, 61 L.Ed. 585, Theard v. United States, 1957, 354 U.S. 278, 282, 77 S.Ct. 1274, 1 L.Ed.2d 1342.

■ These principles must guide us in determining what effect Bennethum's disbarment by the Supreme Court is to have upon his right to practice in this Court. Needless to say, this Court has no authority to re-examine as a reviewing court the action of the Delaware Supreme Court in disbarring Bennethum from practicing before the Delaware State Courts. See Selling v. Radford, supra, 243 U.S. at page 50, 37 S.Ct. at page 378.

■ Following a hearing which Bennethum had before the Censor Committee, the Supreme Court found, as had the Committee, that:

1. Bennethum failed to file state income tax returns for 1950–1955;

2. Bennethum failed to file federal income tax returns for 1942–1954;

3. Bennethum testified falsely under oath before the Internal Revenue Service Agents who investigated his tax delinquencies, and before the Censor Committee in the proceedings which eventuated the Supreme Court's disbarment order, that he had filed federal income tax returns for 1942–1954. He testified falsely under oath before this Court while on trial for wilfully failing to file income tax returns for 1953 and 1954, that he had filed returns for those two years. In all three proceedings he fabricated evidence by falsely claiming that two documents were copies of original federal income tax returns which he had filed for 1953 and 1954.[1]

1. The Supreme Court also held that another transaction involving Bennethum's dealing with a client was "unethical". Despite the recommendation of the Censor Committee that disciplinary action be taken because of that transaction, the Supreme Court seemingly failed to act upon the recommendation because of its view that the offenses pertaining to income taxes and false swearing were far more serious. We agree, and therefore will confine our consideration to the offenses relating to income taxes and false swearing.

The Supreme Court stated that a lawyer who disregards his duty as a citizen to honor his tax obligations fails to uphold the standards of his profession and that such a lawyer has consistently been disciplined by the courts, usually by suspension. But it stated further that a lawyer who testifies falsely before a court is morally unfit to practice law and that disbarment is warranted for such acts. This latter conclusion was the primary basis for Bennethum's disbarment.

Bennethum claims that the State court judgment against him should not be followed in this Court under the doctrine of Selling v. Radford, supra, for the reason, among others, that the State proceedings deprived him of due process of law in violation of the Fourteenth Amendment of the Constitution of the United States. Specifically, Bennethum asserts that he was given no notice or opportunity to be heard either before the Censor Committee or the Supreme Court on whether he should be disciplined for false swearing and fabrication of evidence, despite the fact that his disbarment was based primarily upon those grounds.

The constitutional argument thus made by Bennethum was presented to the Supreme Court for the first time in a petition to reconsider its opinion reported in Del., 162 A.2d 429 which denied reargument.[2] The petition to reconsider was denied by an order stating that the "constitutional questions were raised too late". With us this is not the case. Bennethum pleaded his constitutional defense in his answer to the show cause order and has persistently adhered to it. It must be decided.

■ The show cause order which Bennethum received from the Censor Committee notified him that disciplinary action was under consideration based upon his failure to file state income tax returns for 1950–1955, federal income tax returns for 1942–1955, and to pay taxes for those years.[3] No mention was made of false swearing or fabrication of evidence and Bennethum had no way of knowing that disciplinary measures against him might ultimately be based upon those offenses.[4] It was solely because of the income tax delinquencies and one other matter covered by the show cause order with which we are not presently concerned, that the Censor Committee recommended that Bennethum be disciplined. Neither false swearing nor fabrication of evidence was the basis for the Committee's recommendation that he be disciplined. Report pp. 22, 36.

The crucial issue which the Censor Committee had to decide was whether Bennethum had filed tax returns and paid his tax, as he thrice testified, or whether he had failed to do so, as other evidence indicated. Bennethum was notified in advance of the hearing that his alleged tax delinquencies was the issue which he would have to meet and he was accorded a full hearing upon that issue. Both before and at the hearing Bennethum must have known that the Censor Committee would be confronted with the alternative

2. The petition for reargument claimed that lack of notice of the charge of false swearing deprived Bennethum of the opportunity to submit argument and authority to the Court upon the question of the evidence required to sustain a finding that he swore falsely. No constitutional question was presented by the petition. On the contrary, the petition expressly disavowed any challenge of the power of the Court to determine the offense of false swearing in the absence of a formal charge or to take disciplinary measures based upon false swearing.

3. Two other matters were included in the show cause order which are of no present concern to us.

4. Prior to the issuance of the show cause order, Bennethum, according to the Supreme Court, had already testified falsely and fabricated evidence both before this Court in the criminal trial and before the Internal Revenue Service agents. It was of course possible to include in the show cause order charges based upon these offenses. Obviously it was not possible for Bennethum to be charged in the show cause order with falsification of testimony and fabrication of evidence before the Committee.

of accepting his testimony as trustworthy, or rejecting it as unworthy of belief. He was afforded every opportunity to bring to the Committee's attention all evidence at his disposal which would corroborate his testimony on the income tax issue. In this respect the omission of a formal charge of false swearing or fabrication of evidence in no way prejudiced Bennethum. After having heard Bennethum, the Committee recommended that "Bennethum should be disciplined for his failure to file his state and federal tax returns."

Although the Committee's report did not recommend disciplinary action for false swearing or the fabrication of evidence, two of the Committee's findings dealt with these subjects as they related to the Committee's recommendation that Bennethum be disciplined for his tax delinquencies:

> "(25) Based on a study of all the testimony in the federal court criminal trial (CX 5) the exhibits introduced at said trial (CX 6, 7) and the testimony of Bennethum before the Committee, it is difficult for the Committee to accept his statement that he filed federal tax returns for all the years 1942–1954, inclusive.[5]
>
> \* \* \* \* \* \*
>
> "(30) It is also difficult for the Committee to believe that the federal income tax returns for 1953 and 1954 (CX 7, Deft. Ex. 5 and 6) are true copies of returns which Bennethum actually filed with the Internal Revenue Service. \* \* \* "

Bennethum filed exceptions to each of these findings, and thereby placed them in issue before the Supreme Court insofar as they related to the Committee's disciplinary recommendation based upon the non-filing of tax returns.

Unquestionably, Bennethum's veracity and the authenticity of the copies of the 1953 and 1954 returns were issues which

were before both the Censor Committee and the Supreme Court under circumstances which gave Bennethum notice of their importance as they related to the charges of non-filing, and in this respect he had an adequate opportunity to be heard thereon.

But this does not, as we see it, fully answer the due process question. It is not enough that Bennethum had an opportunity to be heard, after due notice, on whether he should be subject to disciplinary action because of non-filing of tax returns, and that he knew that in this context his veracity and the authenticity of the copies of the 1953 and 1954 returns would be in issue. He was entitled to something more. It was his right to be told that he was faced with possible disciplinary action because of false swearing and fabrication of evidence. Before the rendition of any decision, he was entitled to be heard upon the false swearing and fabrication of evidence charges as they related to potential disciplinary action based thereon, so that he might show, if he could, either by evidence or by argument, that disciplinary action based upon such charges was not warranted, or if it was, that it should be something less than disbarment. Compare Ex parte Bradley, 1868, 7 Wall. 364, 372–375, 74 U.S. 364, 372–375, 19 L.Ed. 214.

These rights were never accorded to Bennethum. Their importance is shown by the disbarment opinion. The Court stated that the falsity of Bennethum's testimony markedly distinguished his case from two other recent cases against members of the Delaware Bar involving charges of federal income tax violations, that Bennethum's failure to file returns was aggravated by his misconduct in giving false testimony and fabricating evidence, and that the latter offenses were far more serious than the non-filing itself. Bennethum argued that when the charge against an attorney consists of a

---

5. In the portion of the report entitled "Discussion" which followed the findings of fact and conclusions of law, the Committee said:

"The Committee has reached the unanimous conclusion that Bennethum did not file his federal tax returns in spite of his testimony to the contrary."

violation of a criminal law not connected with the practice of law, such as the income tax charges against him, a conviction of the crime is a prerequisite to disciplinary action unless moral unfitness to practice appears. Bennethum argued that this exception was not applicable to him since tax evasion was not a crime involving moral turpitude. The Court found it unnecessary to answer this argument. Instead it said that the giving of false testimony and the fabrication of the so-called copies of the 1953–1954 tax returns constituted evidence of moral unfitness which required disbarment even though the offense was not committed in the practice of the law and there had been no prior conviction for it. In re Bennethum, Del.1960, 161 A.2d 229, 233–234.

We hold that due process entitled Bennethum to be heard, after notice, on whether disciplinary action should be taken based upon false swearing and fabrication of evidence. What evidence in mitigation or extenuation he might have offered, what arguments he might have advanced, what law his research might have developed, need not be conjectured. It cannot be assumed, without prejudging Bennethum's case, that they would have been unavailing. Their force could be measured only after they had been heard.

The absence of due process in the State court proceeding precludes us from disbarring Bennethum upon the basis of the State disbarment order. Selling v. Radford, supra, and Theard v. United States, supra. Before we determine whether Bennethum should be disciplined, the hearing which he seeks will be accorded to him. This disposition of the matter makes it unnecessary to consider other questions which Bennethum has raised.

 The show cause order of July 1, 1960 will be discharged. The matter, however, cannot rest here. Being cognizant of the charges of unprofessional conduct made against Bennethum in the State court, this Court has the responsibility of determining, under conditions which will afford Bennethum an opportunity to be heard after due notice, whether disciplinary action by this tribunal is warranted. Accordingly, a new order will issue directing Bennethum to show cause why we should not find that

1. he failed to file state income tax returns for 1950–1955 and to pay taxes due for those years;

2. he failed to file federal income tax returns for 1942–1954 and to pay taxes due for those years;

3. he testified under oath before Internal Revenue Service representatives and the Censor Committee that he had filed federal income tax returns for 1942 through 1954, and before this Court in a criminal tax proceeding that he had filed income tax returns for 1953 and 1954, when he had not filed returns for those years;

4. he testified under oath before the Internal Revenue Service representatives, the Censor Committee and this Court in a criminal tax proceeding that certain documents were copies of federal income tax returns which he had filed for 1953 and 1954 when the originals of such documents had not been filed;

and, in the event we should find that any one or more of the foregoing alleged facts are true, why he should not be disciplined by disbarment or otherwise.

This Court will appoint a committee for the presentation of the charges. The committee will have the burden of establishing that the charges are valid and that disciplinary action should be taken.

Pending further disposition of the matter, the provision of the order of July 1, 1960 temporarily suspending Bennethum from the practice of the law before this Court will continue to be operative.