### In the Matter of William H. BENNETHUM.

Misc. No. 5.

United States District Court
D. Delaware.

June 6, 1962.

Frank H. Hollis, Jacob Kreshtool, Wilmington, Del., and Joseph G. Feldman (of Feldman & Feldman, Philadelphia, Pa.), for William H. Bennethum.

S. Samuel Arsht and William Poole, Wilmington, Del., for the Censor Committee.

Before WRIGHT, Chief Judge, and LAYTON, District Judge.*

PER CURIAM.

On June 27, 1960, the Supreme Court of Delaware entered an order striking the name of William H. Bennethum from the roll of its attorneys and revoking his right to practice law in all courts of Delaware. The reasons for its action are fully stated in In re Bennethum, 2 Storey 504, 161 A.2d 229 (1960), reargument denied 162 A.2d 429 (1960). Upon receiving a certified copy of the disbarment order pursuant to the direction of the Supreme Court, this Court entered an order which, after referring to the disbarment by the Supreme Court, temporarily suspended Bennethum from practicing law in this Court, and directed him to show cause why his name should not be stricken from its rolls and his right to practice law before it should not be revoked.

After considering the answer filed by Bennethum to the show cause order and

---

* Judge STEEL sat with Chief Judge WRIGHT and Judge LAYTON at the hearing in this case but, thereafter, became and is now ill, and by reason thereof, counsel, including Respondent Bennethum, stipulated that this case should be disposed of by Judges WRIGHT and LAYTON.

the briefs and argument made on his behalf, this Court filed an opinion holding, among other things, that a disbarment order by the highest tribunal of a state, although not binding upon a federal court, will, nevertheless, be followed by the latter unless upon a full consideration of the record in the state court it appears that (a) the state court proceeding was lacking in due process because of lack of notice or opportunity to be heard, (b) such an infirmity of proof of want of fair, private and professional character existed in the state court record as clearly to convince the federal court that the state court decision should not be accepted or (c) some other grave reason appears why under principles of right and justice the federal court should not follow the state court. (In re Bennethum, D.C.1961, 196 F.Supp. 541).

Both the Censor Committee and the Delaware Supreme Court found that Bennethum was guilty of (1) failure to file state income tax returns for the years 1950–1955, (2) failure to file federal income tax returns for the years 1942–1954, and (3) moral unfitness for the practice of the law in that he falsely testified before the Censor Committee and the Internal Revenue Service agents that he had filed federal returns for the years 1942–1954; that he falsely testified in a criminal proceeding against him in this Court, U. S. A. v. Bennethum, D.C., 21 F.R.D. 227, that he had filed federal returns for 1953 and 1954; and that before each of the three bodies, he had identified as copies of returns for 1953 and 1954, documents which had been fabricated.

In reviewing the record of the state court proceedings, we noted that Bennethum had not been formally charged with false swearing and fabrication of evidence. Because these findings were heavily relied upon by the Delaware Supreme Court as a reason for Bennethum's disbarment, we concluded that he had not been accorded due process of law in the state court proceedings.

Accordingly, this Court discharged its first show cause order and forthwith issued a new rule directing Bennethum to show cause why it should not find that:

(1) He failed to file state income tax returns for 1950–1955, and to pay taxes due for those years;

(2) He failed to file federal income tax returns for 1942–1954 and to pay taxes due for those years;

(3) He testified under oath before Internal Revenue Service representatives and the Censor Committee that he had filed federal income tax returns for 1942–1954, and before this Court in a criminal tax proceeding that he had filed income tax returns for 1953 and 1954, when he had not filed returns for those years;

(4) He testified under oath before the Internal Revenue Service Representatives, Censor Committee and this Court in a criminal tax proceeding that certain documents were copies of federal returns which he had filed for 1953 and 1954 when the originals of such documents had not been filed;

and in the event this Court should find that any one or more of the foregoing alleged facts are true, why he should not be disciplined by disbarment or otherwise.

At Bennethum's insistence, it was agreed that charges against him in this Court should be tried, de novo, and the charges were so tried for three days. Based upon the evidence introduced at the trial, as well as certain pretrial stipulations, we make the following findings:

*State Income Tax Returns*

Bennethum failed to file state returns at least for the years 1953, 1954 and 1955. No payment was made on the Delaware State income taxes for the years 1950–1955 until after the hearing had taken place before the Censor Committee on November 2, 1959.

In an apparent effort to justify Bennethum's failure to file state income tax returns, an employee of the State Tax Department, Novellino, testified that after he had made certain assessments against Bennethum, he showed them to the Chief Auditor, Warrick, now deceased. Novellino stated that Warrick asked for the folder and the assessments and said, "I will take care of these personally." Bennethum testified before the Censor Committee that when the assessment was made, it was with an agreement on the part of Warrick that this would be in lieu of filing tax returns.

The conversation between Novellino and Warrick apparently took place in 1953, by which time Bennethum was delinquent both in filing and in payment for the years 1950 and 1951. Accepting Novellino's testimony literally and giving it every possible inference favoring Bennethum, it still constitutes little more than corroboration of the fact that some sort of agreement existed between Bennethum and Warrick concerning the filing of the former's returns. We do not pause to comment upon the fact that at best such an agreement was questionable. We merely observe that, assuming its existence, it concerned the filing of Bennethum's returns for the years 1950 and 1951—possibly 1952, and represented an understanding that the assessment for the three years just mentioned would be in lieu of filing returns. It certainly could not have concerned the filing of returns for 1953, 1954 and 1955, and even Bennethum does not say that it purported to grant an extension of time for payment of taxes due for any of the years in question.

Accordingly, we find that Bennethum failed to file state tax returns for the years 1953, 1954 and 1955, and made no payment whatever against the taxes due the State of Delaware for the years 1950 through 1955, until 1959, when some payment was made after the hearing was held before the Censor Committee.

### Federal Income Tax Returns

The Supreme Court of Delaware, on the basis of the record before it, pointed out with inescapable logic the virtual impossibility of federal returns having been filed by Bennethum for the years 1942–1954. The evidence before us carries us to the same conclusion. Unimpeached testimony from representatives of the Bureau of Internal Revenue established that according to its records no returns had been filed or taxes paid. It is unnecessary to detail the procedures which the Bureau followed in recording and indexing the filing of returns, in preserving returns, in recording the collection of taxes paid either by cash or by check, and in giving receipts therefor. These procedures were described in detail by representatives of the Bureau and in large part were viewed personally by the Court in the presence of counsel. The record keeping methods followed by the Bureau were painstaking and meticulous. Records of the filing of returns and the payment of taxes by each taxpayer were kept separately for each year. It is inconceivable that if Bennethum had filed his returns and paid his taxes, as he claims, no record thereof would have existed for any of the 13 years involved. The possibility that all of such records could have been lost or deliberately purloined is too remote to be worthy of consideration. Bennethum produced no documentary evidence, either in the form of cancelled checks, or receipts, or otherwise, to substantiate his claim that the returns were filed and the taxes paid. Both the Censor Committee and the Supreme Court of Delaware concluded that Bennethum's claim that he had filed returns for the 13 years was "wholly incredible." We agree.

### Fabrication of Copies of Tax Returns for 1953–1954

Before the Censor Committee, the Internal Revenue Service representatives, and in the criminal tax case in this Court, Bennethum produced papers which he

swore were copies of the federal income tax returns which he had filed for 1953 and 1954. Since we have concluded that no returns were filed for those years, it follows that the so-called copies were spurious or, as the Supreme Court said, "fabricated."

### Bennethum's Prior Testimony

It is admitted that Bennethum testified under oath before the Internal Revenue Service representatives and the Censor Committee that he had filed federal income tax returns for 1942 through 1954, and that he testified under oath before this Court in a criminal tax proceeding that he had filed federal tax returns for 1953 and 1954. Since we have found that Bennethum failed to file the tax returns in question, it follows that his testimony to the contrary was repeatedly false. The gravity of this offense is emphasized by Bennethum's insistence in this Court that the federal returns were filed and that his taxes were paid.

### Summary

Despite the fact that Bennethum was afforded the opportunity to try the charges against him, de novo, in this Court, except for the testimony of Novellino, no defenses were advanced other than those relied upon in the state court proceeding. The evidence before us overwhelmingly sustains the charges in the show cause rule which we issued. From this the conclusion necessarily follows that Bennethum has been guilty of such gross violations of his professional obligations as plainly to demonstrate his moral unfitness to practice law. Recognizing that the disbarment of an attorney involves one of the gravest exercises of the powers of a court, we can, nevertheless, see no other alternative but to direct that Bennethum's name be stricken from the rolls of this Court.

Order in accordance with this opinion.